## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| CHRIS ALLAN BENNETT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:10-CV-394-M |
| § | |
| STEAK 'N SHAKE OPERATIONS, INC., § | |
| d/b/a STEAK 'N SHAKE, INC., § | |
| § | |
| Defendant. § | |

### **MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Remand to State Court [Docket Entry #3]. For the reasons explained below, the Motion is **DENIED**.

### I.   BACKGROUND FACTS AND PROCEDURAL HISTORY

On February 26, 2010, Defendant Steak 'N Shake Operations, Inc. ("Steak 'N Shake") removed Plaintiff Chris Allan Bennett's age discrimination suit to federal court on the basis of diversity of citizenship, alleging that Bennett is a citizen of Texas and that Steak 'N Shake is a citizen of Indiana. In moving for remand, Bennett argued that the Texas citizenship of Biglari Holdings, Inc. ("Biglari Holdings"), Steak 'N Shake's parent, should be imputed to Steak 'N Shake.[1]

On April 28, 2010, this Court issued a Memorandum Opinion and Order [Docket Entry #11] instructing Steak 'N Shake to file supplemental evidence with the Court to address the

---

[1] The Court's earlier Order of April 28, 2010, refers to Steak 'N Shake's parent company as "Steak 'N Shake Company." However, on April 8, 2010, Steak 'N Shake Company changed its name to Biglari Holdings, Inc. *See* Defendant's Response to Motion to Remand at 5 n.3. To avoid confusion, and to be consistent with the parties' briefing on this matter, the Court uses the parent's new name here.

imputation.  On May 12, 2010, Steak 'N Shake filed supplemental briefing, to which the Court permitted Bennett to respond.

## II.     ANALYSIS

Steak 'N Shake, as the removing party, bears the ultimate burden of establishing the Court's jurisdiction.[2]  However, Bennett must sustain the burden of proving that Steak 'N Shake is not a separate entity from its parent.[3]

The citizenship of a parent corporation may be imputed to its subsidiary when the latter is not truly operating as a separate entity.[4]  Whether a subsidiary is a separate entity is a question of fact.[5]  In *Burnside v. Sanders Associates*, the court stated that, in making such a determination, the matters to be considered are "the degree of control exercised by the parent, the relationship between parent and subsidiary activities, the membership of the Board of Directors, and the maintenance of separate corporate books."[6]  Three years later, in *Amarillo Oil Co. v. Mapco, Inc.*, the court applied a more minimalist standard in determining whether a subsidiary is really separate from its parent: the existence on paper of the two entities, and whether they kept separate books of accounting.[7]

Applying either *Burnside* or *Amarillo Oil*, the relationship here between Steak 'N Shake and Biglari Holdings is not close enough to justify the imputation to Steak 'N Shake of its

---

[2] *See, e.g., Garcia v. Koch Oil Co.*, 351 F.3d 636, 638 (5th Cir. 2003) (citation omitted).
[3] *See Powers v. Fox Television Stations, Inc.*, 907 F. Supp. 719, 722 (S.D.N.Y. 1995) ("[B]y arguing that Defendant is merely the alter ego of its parents, Plaintiff is asking the Court to depart from the general rule "that a subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business."  Because Plaintiff asks the Court to depart from this general rule, it seems reasonable to require Plaintiff to demonstrate that a departure is warranted.  It would be fundamentally unfair to require Defendant to affirmatively demonstrate that it is more than a mere pawn of its parent corporations." (citation omitted)).
[4] *Burnside v. Sanders Assocs., Inc.*, 507 F. Supp. 165, 166 (N.D. Tex. 1980) (Hill, J.).
[5] *Id.*
[6] *Id.* at 166-67 (citation omitted).
[7] *See* 99 F.R.D. 602, 606 (N.D. Tex. 1983) (Robinson, J.) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335 (1925)); *see also id.* at 604 ("[T]he factors to be considered in determining whether to disregard the corporate entity and impute the citizenship of the parent to the subsidiary are severely limited because the creation of diversity jurisdiction is one of the least compelling reasons for disregarding the corporate entity.").

parent's Texas citizenship.[8] Through the declaration of Barry Paige, its in-house counsel, Steak 'N Shake established that it maintains corporate records separate from its parent's; conducts separate board meetings; maintains separate by-laws; and independently manages its day-to-day business by developing its own corporate objectives, contracting on its own behalf, setting its own budget, developing its own sales and marketing plans, purchasing its own inventory, setting its own employee salaries, developing its own products, and maintaining separate accounting systems and bank accounts.[9] Steak 'N Shake is also responsible for its own administrative operations, including human resources, payroll, legal, risk management, and marketing.[10]

Bennett argues that the two companies are not operating autonomously because Sardar Biglari is the Chairman and Chief Executive Officer for both companies, and he exercises significant control over Steak 'N Shake's activities.[11] Bennett also contends that the entities are not separate because they file a consolidated financial statement with the Securities and Exchange Commission.[12]

These facts do not outweigh the other evidence in the record, which overwhelmingly supports Steak 'N Shake's independent existence. While the presence of common directors and officers may be one factor to consider,[13] it is not determinative of the subsidiary's status.[14] Nor is the filing of a consolidated regulatory financial statement, which is not inconsistent with Steak 'N Shake's assertion that it keeps separate accounting books, sufficient to establish that the two

---

[8] *Cf. Burnside*, 507 F. Supp. at 168.
[9] Defendant's Response, App. at ¶¶ 4, 7.
[10] *Id*. at ¶ 3.
[11] Plaintiff's Response at 1-2.
[12] *Id.* at 2.
[13] *See Burnside*, 507 F. Supp. at 166-67.
[14] *See Amarillo Oil*, 99 F.R.D. at 605 (holding subsidiary to be a separate entity, despite the fact that the officers and directors of the parent and subsidiary were completely interlocking).

companies are indistinct.[15]  The specific facts attested to in Barry Paige's declaration lead to the conclusion that Steak 'N Shake's day-to-day operations are managed independently of Biglari Holdings' control.  Mr. Biglari's role in guiding both companies' overall business policies and investment activities does not defeat Steak 'N Shake's argument that it is a separate corporate entity from Biglari Holdings.[16]

### III.   CONCLUSION

The supplemental evidence demonstrates that Steak 'N Shake is a separate corporate entity from its parent, Biglari Holdings.  Complete diversity thus exists between Bennett and Steak 'N Shake, and Bennett's Motion to Remand is therefore **DENIED**.

**SO ORDERED**.

June 14, 2010.

*[signature]*
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[15] *See id.* at 606 (viewing shared accounting processes as a business expediency, rather than as evidence that a subsidiary does not exist independently of its parent, as long as the subsidiary maintains its own corporate books).

[16] *Cf. Burnside*, 507 F. Supp. at 168 (holding a subsidiary to be a separate entity, where the CEO of the parent company gave advice and guidance on the policy level and helped with equity financing, because the CEO had little to do with the day-to-day operations of the subsidiary).  The statement in an SEC filing that Mr. Biglari is "singularly responsible for business and investment activities" is neither compelling nor determinative.  Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Dismiss, Ex. 3 (purportedly excerpted from one of Steak 'N Shake's S-4/A filings).